UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:15-CV-14418-ROSENBERG/LYNCH

WENDALL JERMAINE HALL,

    Plaintiff,

v.

DR. OLUGBENGA OGUNSANWO,

    Defendant.
    _____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** came before the Court upon Defendant's Motion for Judgment on the Pleadings [DE 10]. The Court has carefully considered Defendant's Motion and Plaintiff's Response thereto [DE 14].[1] In addition, on May 13, 2016, the Court issued a Notice to the Parties Pursuant to Rule 12(d) [DE 50]. In that Notice, the Court informed the parties that it would convert Defendant's Motion into a motion for summary judgment and instructed the parties to submit any relevant evidence and arguments in support of, or in opposition to, Defendant's Motion no later than May 23, 2016. *See* DE 50. The Court has considered the Supplemental Additional Arguments [DE 51] and attachments thereto submitted by Plaintiff,[2] as well as the materials attached to Defendant's Motion and Plaintiff's Response, and is otherwise fully advised in the premises. For the reasons set forth below, Defendant's Motion is **GRANTED IN PART and DENIED IN PART**.

---

[1] Defendant did not file a reply.
[2] Defendant did not submit any additional evidence or arguments in response to the Court's Notice.

## I.   INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983 for deprivation of constitutional rights. *Pro se* Plaintiff Wendall Jermaine Hall ("Plaintiff") is an inmate currently housed at the Jefferson Correctional Institution in Monticello, Florida. Defendant Dr. Olugbenga Ogunsanwo ("Defendant") is employed by the Florida Department of Corrections' Office of Health Services ("OHS") as Assistant Secretary for Health Services. Through this action, Plaintiff seeks five million dollars in compensatory and punitive damages for Defendant's alleged deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. Viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the Court finds that there is a genuine dispute as to whether Defendant personally participated in a deprivation of Plaintiff's Eighth Amendment rights. Defendant is therefore not entitled to judgment as a matter of law with respect to direct liability under § 1983. However, the Court finds no genuine dispute as to whether there is a causal connection between Defendant's conduct and any constitutional deprivation by one of his subordinates. Defendant is therefore entitled to judgment as a matter of law with respect to supervisory liability under § 1983.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008)

(citing *Anderson*, 477 U.S. at 247–48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247–48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

### III. BACKGROUND FACTS[3]

Viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the Court finds that Plaintiff sought emergency treatment for an inability

---

[3] Many of these facts are supported by Plaintiff's sworn statements. *See* DE 14; DE 51-1. The portions of Plaintiff's sworn statements on which the Court relies satisfy the requirements of Rule 56(c) and do not constitute inadmissible hearsay. These portions are therefore appropriate to consider. *See, e.g.*, *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1372 (S.D. Fla. 2009); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

3

to urinate and associated pain while housed at the Martin Correctional Institution in May of 2012. DE 1-2 at 3 ¶ 6; DE 14 at 21. On-site medical staff initially attempted to treat Plaintiff's condition through catheterization. DE 1-2 at 3–4 ¶¶ 7–8; DE 14 at 21. When the condition persisted, Plaintiff was transported to an outside urologist, who on May 9, 2012, recommended that Plaintiff return within a month for uroflowmetry testing. DE 1-2 at 4 ¶¶ 9–10; DE 14 at 21–22. The following day, one of Plaintiff's on-site doctors approved the urologist's recommendation. DE 1-2 at 4 ¶ 11; DE 14 at 22, 43.

That approval was subsequently reviewed and overturned by the OHS's Utilization Management department. DE 1-2 at 4–5 ¶ 12; DE 14 at 22. In a letter dated June 7, 2012, Physician Advisor Committee Chairman Dr. William Nields informed Plaintiff's on-site doctor that her prior approval had been reviewed and that Plaintiff's request for uroflowmetry testing had been denied. DE 1-2 at 4–5 ¶ 12; DE 10-1 at 1–2 ¶¶ 5–6; DE 10-1 at 3; DE 14 at 42. Dr. Nields advised that on-site medical staff should continue to evaluate and manage Plaintiff's condition and that Plaintiff should be referred for outside treatment only if his condition could not be managed on-site. DE 10-1 at 1–2 ¶¶ 5–6; DE 10-1 at 3; DE 14 at 42. Dr. Nields further instructed as follows: "You may request reconsideration of this decision at any time. If you feel the procedure/surgery is warranted, please resubmit the request with additional justification or discussion of the patient's condition." DE 10-1 at 3; DE 14 at 42. Following the denial of Plaintiff's request for uroflowmetry testing, Plaintiff's condition worsened, causing him severe pain. DE 1-2 at 5 ¶ 12; DE 14 at 21–38; DE 51-1 at 1–7.

On June 20, 2012, Plaintiff wrote a letter addressed to the "Assistant Secretary of Medical and Health Services," 501 South Calhoun Street, Tallahassee, FL 32399,[4] and hand-delivered it to the inmate mailbox at the Martin Correctional Institution. *See* DE 14 at 23, 39–41;

---

[4] This address appears at the top of Dr. Nields's letter dated June 7, 2012. *See* DE 10-1 at 3; DE 14 at 42.

DE 51-1 at 1–3. At the time, Defendant was the Assistant Secretary for Health Services. *See* DE 10-1 at 1 ¶ 2. In his letter, Plaintiff complained about the Utilization Management department's denial of his request for uroflowmetry testing, writing:

> [O]n June 7, 2012 your office of health services "utilization management["] officials denied or disapproved of the doctors and urologist consultation request for me . . . for my serious ongoing urinary retention and difficulties and enlarged prostate.
>
> This has caused me severe physical pain throughout my body ongoingly and ongoing severe physical pain in my stomach, bladder prostate aches in my stomach and abdominal pain so bad I cannot walk at times.
>
> I request you to overturn or reverse utilization management decision disapproving my physician and doctors consultation request and to please approve and ensure that I be seen by the urologist immediately for the urologist can perform the necessary uroflow test and further necessary test and evaluations recommended by Martin C.I[.] doctors and the urologist for my serious ongoing urinary retention difficulties or inabilities and enlarged prostate and my conditions are getting worse and severe physical pain. I need this uroflow test done <u>immediately</u> by a urologist.

DE 14 at 39–41. Plaintiff has presented sufficient evidence to raise a rebuttable presumption that Defendant received his letter dated June 20, 2012. "Where an item is properly mailed, there exists a rebuttable presumption that the item is received by the addressee. This presumption of receipt arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail." *Anderson v. Branch Banking & Trust Co.*, 119 F. Supp. 3d 1328, 1341 (S.D. Fla. 2015) (internal quotation marks and citations omitted). Defendant does not specifically deny receiving Plaintiff's letter dated June 20, 2012. Rather, Defendant attests that "as Assistant Secretary for Health Services, [his role] was limited to review of any appeal by inmates regarding utilization management's decision," and that "[n]o such appeal was sent to [him] concerning [Plaintiff]." *See* DE 10-1 at 2 ¶ 7. This general statement is tantamount to "mere denial" of receipt and is therefore insufficient to rebut the presumption that Defendant received

5

Plaintiff's letter. *See Anderson*, 119 F. Supp. 3d at 1341. Despite having received Plaintiff's letter dated June 20, 2012, Defendant did not respond or take any other action. *See* DE 14 at 23.

Several months later, during a physical examination on September 4, 2012, on-site medical staff determined that Plaintiff's prostate was enlarged and recommended further evaluation by an outside urologist. DE 1-2 at 4 ¶ 13. The OHS's Utilization Management department ultimately approved that recommendation, but not until November 21, 2012. *Id.* ¶ 14. During the two-and-a-half months between Plaintiff's on-site physical examination and evaluation by an outside urologist, Plaintiff's condition continued to worsen, causing further pain. *Id.* at 5–6 ¶ 14.

On November 22, 2012, Plaintiff was transported to the South Florida Reception Center for evaluation by an outside urologist. *Id.* at 6 ¶ 15; DE 51-1 at 14–15. During that evaluation, the urologist explained that he was unable to perform uroflowmetry testing because the South Florida Reception Center lacked the required equipment; Plaintiff would instead have to visit the urologist's office for uroflowmetry testing. DE 1-2 at 6 ¶ 15; DE 51-1 at 14–15. The urologist further recommended that Plaintiff receive a cystoscopy to evaluate his enlarged prostate. DE 1-2 at 6 ¶ 16. The OHS's Utilization Management department approved that recommendation about one month later, on December 27, 2012. *Id.* ¶ 17. During that month, Plaintiff's condition worsened, causing further pain. *Id.*

Following Plaintiff's cystoscopy on December 27, 2012, the urologist recommended surgery to address Plaintiff's enlarged prostate. *Id.* at 7 ¶ 19; DE 51-1 at 17. The OHS's Utilization Management department ultimately approved that recommendation, and Plaintiff underwent the recommended surgery over a month later, on February 6, 2013. *Id.* ¶ 20. Between

late-December of 2012 and early-February of 2013, Plaintiff's condition worsened, causing further pain. *Id.*; DE 14 at 21–38.

At all times between May 2012 and February of 2013, Defendant was the Assistant Secretary for Health Services. *See* DE 10-1 at 1 ¶ 2. In that position, Defendant's duties included "oversight of medical services provided to inmates of the Department of Corrections by Comprehensive Health Care contractors, monitoring Quality Management Programs, and Infection Control programs." *Id.* ¶ 3. Defendant had no input in the decisions of OHS's Utilization Management department regarding any of Plaintiff's medical care. *Id.* at 2 ¶¶ 8–9. Defendant's role was instead limited to review of any appeal by an inmate of the Utilization Management department's decisions. *Id.* ¶ 7.

Plaintiff initiated this action in state court on September 4, 2015, and served Defendant on November 9, 2015. *See* DE 1; DE 1-2. On December 7, 2015, Defendant timely removed this action. *See* DE 1. The pleadings closed when Defendant filed his Answer and Affirmative Defenses on December 14, 2015. On January 4, 2016, Defendant filed the Motion for Judgment on the Pleadings presently before the Court. *See* DE 10. After providing notice and an opportunity to supplement the record, the Court converted Defendant's Motion for Judgment on the Pleadings to a motion for summary judgment. *See* DE 50.

## IV.  ANALYSIS

Plaintiff's Complaint presents a claim against Defendant in his individual capacity pursuant to 42 U.S.C. § 1983. Essentially, Plaintiff alleges that Defendant's and/or the OHS's Utilization Management department's denial and delay of certain medical treatment between May of 2012 and February of 2013 constitutes deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. As best the Court can tell from Plaintiff's

Complaint, Plaintiff seeks to hold Defendant individually liable for this constitutional deprivation on the theory that Defendant, as Assistant Secretary for Health Services, oversees the OHS, including its Utilization Management department.

"A claimant is entitled to redress under § 1983 if he can prove that a person acting under color of state law committed an act that deprived him of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Hutchinson v. Wexford Health Services, Inc.*, No. 15-13498, 2016 WL 277745, at *2 (11th Cir. Jan. 22, 2016). "Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and supports a cause of action under § 1983." *May v. Hetzel*, 630 F. App'x 994, 996 (11th Cir. 2015) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Hutchinson*, 2016 WL 277745, at *2 (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009)).

Supervisory officials cannot be held liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *Battiste v. Lamberti*, 571 F. Supp. 2d 1286, 1300 (S.D. Fla. 2008) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). Rather, "[a] supervisor may only be subject to 'direct liability' for his own actions or, under limited circumstances, supervisory liability for the actions of his subordinates." *Id.* (quoting *Holloman v. Harland*, 370 F.3d 1252, 1263 (11th Cir. 2004)). In other words, a supervisor is liable only when he "personally participates in the subordinate or organizational misconduct or where a causal connection exists between the individual's conduct and the alleged misconduct." *Woodburn v. State of Florida Dep't of Children & Family Servs.*, 859 F. Supp. 2d

8

1305, 1309 (S.D. Fla. 2012) (quoting *Am. Fed'n of Labor and Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1190 (11th Cir. 2011)) (internal quotation marks omitted); *see also Battiste*, 571 F. Supp. 2d at 1300 (quoting *Braddy v. Fla. Dep't of Labor & Empl. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)).

> A "causal connection" may be shown in one of three ways: by evidence of (1) "a custom or policy that results in deliberate indifference to constitutional rights," (2) "facts that support an inference that the supervisor[ ] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," or (3) "a history of widespread abuse" that notified the supervisor of the need to correct the alleged deprivation, but [s]he failed to do so.

*Woodburn*, 859 F. Supp. 2d at 1309–10 (S.D. Fla. 2012) (quoting *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009)). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Battiste*, 571 F. Supp. 2d at 1300 (quoting *Cottone*, 326 F.3d at 1360–61).

*Direct Liability*

It is unclear whether Plaintiff intended to assert a claim against Defendant under a theory of direct liability, supervisory liability, or both. Plaintiff's Complaint is devoid of specific factual allegations of Defendant's personal participation in any conduct concerning Plaintiff's medical treatment. At best, the five paragraphs labeled Counts I through V contain conclusory statements to the effect that "[D]efendant and or his office of health services utilization management" denied or delayed certain treatment with deliberate indifference to Plaintiff's serious medical needs. *See* DE 1-2 at 8–9. Nowhere in Plaintiff's Complaint, including the 16 paragraphs comprising Plaintiff's "Statement of Facts," does Plaintiff allege a single specific decision made or action taken by Defendant. *See* DE 1-2 at 2–9.

However, Plaintiff has submitted evidence that he mailed a letter to Defendant on June 20, 2012, complaining about his condition and the denial of certain medical treatment, which

9

Defendant ignored, and that Plaintiff's condition worsened, causing severe physical pain, as a result. *See* DE 14 at 21–38, 39–41; DE 51-1 at 1–7. This is sufficient to raise a genuine dispute as to whether Defendant personally participated in a deprivation of Plaintiff's Eighth Amendment rights. *See Hutchinson*, 2016 WL 277745, at *2. In other words, a reasonable jury could find that Defendant is directly liable for his deliberate indifference to Plaintiff's serious medical needs. Accordingly, Defendant is not entitled to judgment as a matter of law with respect to direct liability under § 1983. *See Miccosukee*, 516 F.3d at 1243 (*citing Anderson,* 477 U.S. at 247–48); *Shiver*, 549 F.3d at 1343.

*Supervisory Liability*

Again, it is unclear whether Plaintiff intended to assert a claim against Defendant under a theory of direct liability, supervisory liability, or both. Plaintiff's Complaint is devoid of specific factual allegations of the causal connection necessary to subject Defendant to supervisory liability for the actions of his subordinates. Plaintiff alleges throughout his Complaint that the Utilization Management department of the OHS denied or delayed certain medical treatment. In an apparent attempt to establish a causal connection between Defendant's conduct and the alleged constitutional deprivation, Plaintiff refers to this department as the Utilization Management department of *Defendant's* OHS. *See* DE 1-2 at 4–7 ¶¶ 12, 14, 17, 18, 20 (alleging, for example, that "(U.M.) utilization management, a section or part of the defendants Olugbenga Ogunsanwo assistant secretary of medical and health services, office of health services" denied Plaintiff's request for uroflowmetry testing, and that "defendant Ogunsanwo's office of health services (U.M.) utilization management" delayed Plaintiff's surgery).

This vague suggestion that Defendant, as Assistant Secretary for Health Services, oversees the OHS and its Utilization Management department is insufficient to establish a causal

connection between Defendant's conduct and the alleged constitutional violations arising from the Utilization Management department's decisions concerning Plaintiff's medical treatment. Plaintiff's Complaint is devoid of factual allegations from which the Court could reasonably infer (1) that Defendant implemented a custom or policy resulting in deliberate indifference to constitutional rights, (2) that Defendant directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so, or (3) that Defendant failed to correct the alleged constitutional deprivations despite a history of widespread abuse notifying Defendant of the need to do so. *See Woodburn*, 859 F. Supp. 2d at 1309–10; *see also Thompson v. Bliss*, No. 8:11-cv-839-T-30TBM, 2011 WL 4975548, at *4–5 (M.D. Fla. Oct. 19, 2011) (dismissing § 1983 claims brought under theory of supervisory lability where plaintiff failed to allege any facts establishing connection between defendants and alleged constitutional violation); *Cottone*, 326 F.3d at 1361–62 (finding no basis for supervisory liability where plaintiffs failed to allege causal connection between supervisors and unconstitutional conduct). Plaintiff's Complaint thus fails to meet the "extremely rigorous" standard required to hold Defendant liable in his individual capacity for the actions of a subordinate. *See Battiste*, 571 F. Supp. 2d at 1300.

    Moreover, Plaintiff has failed to submit any evidence that the requisite causal connection exists. While it is undisputed that Defendant has some responsibility for overseeing the medical care provided to inmates and that Defendant reviews the decisions of OHS's Utilization Management department upon submission of an appeal by an inmate, these facts are insufficient to establish the requisite causal connection. Plaintiff has submitted no evidence (1) that Defendant implemented a custom or policy resulting in deliberate indifference to Plaintiff's constitutional rights, (2) that Defendant directed subordinates to act unlawfully or knew that the

subordinates would act unlawfully and failed to stop them from doing so, or (3) that Defendant failed to correct the alleged constitutional deprivations despite a history of widespread abuse notifying Defendant of the need to do so. Plaintiff's reliance on irrelevant provisions of the Florida Administrative Code and various Health Services Bulletins dated well after June 2012 is unavailing. *See, e.g.*, DE 14 at 45 (Florida Administrative Code section 33-404.102, which governs the provision of mental health services to inmates); DE 14 at 46–54 (Florida Department of Corrections Procedure Number 401.005, which establishes guidelines for interaction between contract institutions and the Utilization Management department; DE 14 at 55–59 (Health Services Bulletin 15.01.04, effective September 23, 2014); DE 14 at 60–69 (Health Services Bulletin 15.09.04, effective July 8, 2013). In the absence of a genuine dispute of material fact, Defendant is entitled to judgment as a matter of law with respect to supervisory liability under § 1983.

## V.     CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's converted Motion for Summary Judgment [DE 10] is **GRANTED IN PART** as to supervisory liability and **DENIED IN PART** as to direct liability under § 1983.

2. In light of the fact that Defendant's Motion was filed at an early stage and was converted to a motion for summary judgment by the Court, the Court will permit another motion for summary judgment to be filed prior to the deadline for dispositive motions if such a motion would be appropriate to address any issues that may have developed through further discovery in this case.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 21st day of June, 2016.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record
Wendall Jermaine Hall

12